copy ①

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

Ronald S. Tillman,  )
    Plaintiff,  )

    v.  )

Donald Romine, Tom Sniezek,  )
Louis Lopez, A.W. Alexander,  )
A. Whitecavage, Romeo Bone,  )
A. Rowe Jr., Kieth Koncur,  )
FNU. Hamilton, D. Eichner,  )
D. Greene, Edward Sobeleski,  )
FNU. Lutz, R. Frasch,  )
FNU. Kratzer, FNU. Hagenbuch,  )
W.L. Robey,  )
    Defendants.  )

**1: CV 00-2041**

Civil No.: _____

**JURY TRIAL DEMANDED**

FILED
SCRANTON

NOV 2 2 2000

PER _____
DEPUTY CLERK

### COMPLAINT

    And now comes the Plaintiff Ronald S. Tillman, pro se, and files this Complaint;

## I. PARTIES

1. Plaintiff Ronald S. Tillman (Hereinafter "Plaintiff"), is confined at United States Penitentiary Lewisburg, P.O. BOX 1000, Lewisburg, Pa. 17837.

2. The above named Defendants (Hereinafter "Defendants") are individuals whom are employed as officers here at United States Penitentiary Lewisburg (Hereinafter "USP Lewisburg"). These officers are being sue in their individual capacity.

## II.  JURISDICTION

3.   This Court maintains jurisdiction over the instant case
in accordance with 28 U.S.C. § 1331 as this action is based on
the laws and Constitution of the United States.  Also, juris-
diction is proper to issue a writ of Mandamus pursuant to 28
U.S.C. § 1361.

## III.  ADMINISTRATIVE REMEDIES

4.   Plaintiff has exhausted all his administrative remedies
available to him.  Federal Bureau of Prisons Informal resolu-
tion attempt 5/19/00.  Federal Bureau of Prisons BP-9 case
number 214074-F1.  Federal Bureau of Prisons BP-10 case num-
ber 214074-R1.  Federal Bureau of Prisons BP-11 case number
214074-A1, all was denied.

## IV.  FACTS

5.   Plaintiff have on numerous occasions brought to the atten-
tion of the Defendants here at USP Lewisburg, the problem
concerning the smoking policy.  Where as officers and inmates
are violating the smoking policy.  And the officers that refused
to enforce the smoking policy throughout this institution.

6.   On or about 3/14/00, Plaintiff went and spoke with Lewis
Lopez, Associate Warden of Custody.  Plaintiff told [Lopez]
about the problem with the smoking.  Plaintiff stated to Lopez
how his officers and inmates were smoking in non-smoking areas.
That his officers are not enforcing the non-smoking policy at

USP Lewisburg.  Plaintiff told Lopez that the smoke was making
him [Plaintiff] sick.  That it was burning Plaintiff's nose and
throat.  Lopez said that he would take care of it.

7.   On or about 3/21/00, Plaintiff went to Tom Sniezed, Asso-
ciate Warden of Programs.  Plaintiff told Sniezek that Plain-
tiff had went to Lopez and spoke with him about the smoking
problem throughout this institution.  Plaintiff stated to
Sniezek that Plaintiff has not seen any improvement in the
officers enforcing the smoking policy, after Plaintiff talked
with Lopez.  Plaintiff asked Sniezek could he instruct his
officers to comply with the smoking policy at USP Lewisburg.
Because the smoke is making Plaintiff sick, burning his nose
and throat.  Sniezek said he would look into it.

8.   On or about 3/21/00, Plaintiff went and spoke with A.W.
Alexander, Unit (3) Manager, about the smoking problem in Unit
(3) E-1 and the non-smoking TV rooms.  Plaintiff stated to
Alexander that [A. Whitecavage] was moving inmates that smoke
on the non-smoking floor.  And that inmates and officers were
smoking all over Unit (3) E-Block in no smoking areas.  Plaintiff
told Alexander how the smoke was making Plaintiff sick.  Alex-
ander asked Plaintiff what was going on in the block.  Plaintif
stated that officers and inmates were smoking in non-smoking
areas.  How they [Alexander] had inmates living on the non-
smoking floor that smoke.  Plaintiff asked Alexander to move
those inmates off the non-smoking floor.  Alexander said that
he would take care of the problem.

9.   On or about 3/22/00, Plaintiff went and spoke with his

-3-

Counselor, A. Whitecavage, about the inmates that were being
placed on Unit (3) E-1 non-smoking floor that smoke. White-
cavage said that he was not moving smoker on Unit (3) E-1
non-smoking floor. Plaintiff asked Whitecavage to come to Unit
(3) E-1 and check to see who is smoking. Or ask the inmates
if they smoked or not, because the smoke was making Plaintiff
sick. It was also burning Plaintiff's nose and throat. White-
cavage said that he would look into it. But on 8/15/00 White-
cavage moved two more inmates on the non-smoking floor that
smoked. But as of this date 10/30/00 inmates are still smoking
on the non-smoking floor.

10. On or about 4/13/00, Plaintiff went and spoke with the
Warden, Donald Romine, in the kitchen on main line about the
smoking problem in this institution. Plaintiff told Romine that
he had already talked with Lopez and Sniezek and Alexander his
Unit Manager about the smoking problem all over this institu-
tion. Plaintiff told Romine how the smoke was making Plaintiff
sick. How you can't even walk down the hallway without some
one smoking. Officers and inmates are smoking in the halls
and TV rooms and throughout the Units. Officers are not en-
forcing the non-smoking policy throughout this institution.
Romine told Plaintiff that he would have a talk with his offi-
cers and told Plaintiff to go back to his Unit Manager [Alex-
ander] about those inmate that were living in Unit (3) E-1
that smoke, so that they could remove those inmate out of the
non-smoking floor.

11. On 6/19/00, at 10:05 p.m. officer Edward Sobeleski came
in Unit (3) E-Block to help with the count. An inmate was found

dead in his bed. Sobeleski was watching the cube so that no one would disturb the area. Sobeleski started smoking. He lit up a cigarette after cigarette. Plaintiff told Sobeleski that this is a non-smoking floor. Sobeleski kept right on smoking. While Sobeleski was smoking, every inmate that smoked on E-1 was smoking right a long with Sobeleski. And Sobeleski said nothing. By the time Sobeleski left the Block he has smoked on whole pack of cigarettes.

12. On 7/18/00, Officer Romeo Bone was working Unit (3) E-Block. While making his rounds [Bone] walked up on an inmate smoking on the non-smoking floor and Bone told the inmate that I was told to write an incident report on any inmate caught smoking in a non-smoking area(s). And this is a non-smoking area. The inmate put his cigarette out and left the floor.

13. On 9/11/00, at 11:20 a.m. Officer A. Rowe Jr., while making rounds in Unit (3) E-1, there was an inmate smoking; Rowe walked right to him saying nothing. As officer Rowe was leaving e-1, officer Rowe opened the door and there was another inmate smoking on the phone. Which is a non-smoking area. Rowe walked right by him. Then on these dates while working Unit (3) E-Block, officer Rowe did observed inmates smoking and did nothing about it: 9/8/00; 9/9/00 and 9/16/00 at 12:10 p.m.

14. On 9/6/00 at 9:25 p.m., while making his rounds on Unit (3) E-Block, Officer Wesley Robey came in the non-smoking TV room; inmates were smoking in this TV room and Robey said nothing. On 9/14/00 at 7:45 p.m., inmates were smoking in the non-smoking phone area. Robey walked right by them saying nothing. 9/14/00 at 7:50 pm. Robey was sitting in the non-smoking Tv

room watching the [Martin] show.  Two inmates were smoking
and Robey was sitting right behind them and said nothing.  And
on 9/18/00 at 9:35 p.m.; 9/21/00 at 9:25 p.m.; 9/22/00 at
4:55 p.m.; and 9/27/00 at 8:28 p.m. inmates were smoking in
the non-smoking areas at all the above dates.  And Robey
never said anything to them.  Or asked them to leave the non-
smoking area(s).

15.   On 9/9/00 at 9:35 p.m., Officer (FNU) Hamilton came on
Unit (3) E-1 to shake down an inmate's cube.  While Hamilton
and another officer shook down the inmate's cube, that inmate
was two cubes down smoking.  Hamilton picked up the inmate's
pack of cigarette and looked in them.  Hamilton and the other
officer got through shaking down the inmate's cube.  Hamilton
then told the inmate that he was sending him to the "Lieutenant's"
office.  The inmate asked Hamilton could he get his cigarette,
the  inmate got his cigarettes and went down to see the Lieu-
tenant.  When this inmate came back to the block, Hamilton let
the inmate back in the block.  This inmate was smoking a cig-
arette when he came through Hamilton said nothing to him, and
the inmate walked right by Hamilton and went on E-1 which is a
non-smoking floor "Smoking" his cigarette.  On 9/16/00 at
8:35 p.m., Hamilton and another officer was on the first floor
phone area, at the front door.  They had an inmate they were
to the lieutenant's office.  There were ("Three") inmates
smoking, two were on the phone and the another one was talking
with Hamilton.  At no time did Hamilton tell  these inmates to
put out their cigarettes or leave the non-smoking area.  And

-6-

on 9/17/00 at 4:50 p.m.; 9/21/00 at 9:50 p.m.; 9/23/00 at
9:23 p.m.; and 9/24/00 at 4:36 p.m. inmates were smoking in
non-smoking areas, and Hamilton said nothing.

16.  on 9/19/00 at 12:00 mid night, Officer (FNU) Hagenbuch,
while making his count at night on Unit (3) E-1 , inmates
were smoking and Hagenbuch did not say anything to them.  When
Hagenbuch came on the floor to count, inmates were smoking but
Hagenbuch never said anything to them.  When Hagenbuch opened
up the block in the morning and comes, inmates were smoking and
Hagenbuch don't say anything to them.

17.  On 9/24/00 at 12:17, Officer (FNU) Kratzer came on the
first floor looking for an inmate.  There were an inmate smok-
ing, Kratzer started talking with this inmate.  Kratzer asked
this inmate where did another inmate live. The inmate was still
smoking and told Kratzer that he did not know this inmate.  On
9/25/00 at 8:15 p.m. Kratzer, while making his rounds, inmates
were smoking all over the first floor.  And Kratzer walked right
by them and never saying anything to them.  And on 9/25/00
at 12:15 p.m. Kratzer was walking with an inmate on the non-
smoking floor while this inmate was smoking a cigarette and
Kratzer said nothing to him.  And on 9/28/00 at 12:00 noon
Kratzer was doing his block sensus count.  Kratzer came into
the non-smoking TV room, inmates were smoking.  Kratzer did
his sensus count and left never saying anything to those in-
mates that were smoking.  And on 9/29/00 at 3:45 p.m., Kratzer
walked right by an inmate that was smoking on the first floor
phone area, which is a non-smoking area.

-7-

18.   On 10/1/00 at 8:00 p.m., Officer D. Eichner was on the
first floor in Unit (3) E-1 shaking down an inmate's cube.
Right across from where Eichner was, there was an inmate smok-
ing.  Eichner could not but help but to see him because the
inmate was standing up smoking.  Eichner never said anything
to him.  Eichner got through shaking down the inmate's cube.
Eichner walked out the door of the first floor.  Right at the
front of the door, is the phone area.  There was an inmate
smoking.  Eichner just walked right by him saying nothing.  On
10/3/00 at 9:50 p.m.

19.   10/4/00 at 4:45 and 9:55 p.m. and 10/8/00 at 7:00 p.m.
Eichner was the officer working Unit (3) E-Block on the above
dates, and inmates were smoking and Eichner did nothing or
said anything to those inmates that was smoking.

20.   On 10/5/00 at 4;05 p.m. Officer D. Greene came into Unit
(3) E-Block to help with the four (4) o'clock count.  When
Greene came into Unit (3) E-Block he was smoking.  Greene
was standing in the first floor hall talking with Officer
R. Frasch and again at 9:50 p.m. Greene was in the non-smoking
Tv room, there were three inmates in the non-smoking Tv room
smoking.  Greene never said one word to them.  On 10/7/00 at
6:30 p.m. Greene was smoking in the non-smoking TV room.

21.   On 10/10/00, Officer (FNU) Lutz was working Unit (3)
E-Block.  An inmate came down to use the phone, Lutz was
standing there when this inmate was smoking.  Lutz never said
anything to him.  On 10/13/00 at 8:35 a.m. there was a shake
down in Unit (3) E-1 the inmates went up to the TV room and
there were inmates smoking and Lutz said nothing to them.

-8-

On 10/15/00 at 1:33 p.m., inmates were in the non-smoking Tv
rooms smoking and Lutz was watching football, while these in-
mates were smoking.

22.  On 10/19/00 at 12:17 p.m., Officer R. Frasch was on the
first floor in Unit (3) E-Block.  There was an inmate smoking
in the non-smoking phone area.  Frasch never said anything to
him, and again at 3:45 p.m. on 10/19/00 Frasch was in the same
area on the first floor non-smoking area, when an inmate came
down smoking.  He was standing right in from of Frasch smoking,
but Frasch never said anything to him.  On 10/20/00 at 12:00
and 10/27/00 at 8:00 a.m. inmates were smoking in non-smoking
areas and Frasch said nothing.

## COUNT I
### (Cruel And Unusual Punishment)

23.  The Defendants are aware of the harms caused by second
hand smoke.

24.  The Defendants have taken a deliberate indifference to
the serious medical need of Plaintiff, to-wit: to be free from
the effects of second hand smoke.

25.  Plaintiff has described and has brought the problem to the
Defendants' attention.  However they simply ignored his com-
plaints.

26.  As a proximate result of the cruel and unusual punish-
ment inflicted by the Defendants, Plaintiff was damaged.

## COUNT II

27.  (Action in mandamus pursuant to 28 U.S.C. § 1361).

28.  Defendants are agents of the United States.

29.  Federal Bureau of Prisons' policy here at USP Lewisburg purpose as a result of the Surgeon  General determination that passive inhalation of environmental tobacco smoke possess a health hazard, it is necessary to limit smoking to certain areas of the institution.  Program Statement 1640.03.

30.  However, the Defendants refused to comply or enforce the policy.  The Defendants have a duty to comply and enforce the policy.

31.  All administrative remedies are exhausted.

32.  irreparable harm will continue unless the Defendants receive a mandate to comply with the policies of which they have a duty to comply with.

33.  Plaintiff request an injunction compelling the Defendants to comply with the non-smoking policy here at USP Lewisburg.

34.  Therefore, Plaintiff requests a writ of Mandamus pursuant to 28 U.S.C. § 1361.

Wherefore, Plaintiff Ronald S. Tillman, requests in the amount to be proven at trial compensatory damages, punitive damages, and fees recovery of cost.  Plaintiff requests that the Defendants be enjoined from further inflation of cruel and unusual punishment.  And be required to properly enforce the smoking policy in line with community standards, and that a writ of mandamus be issued pursuant to 28 U.S.C. § 1361.

<u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury on each of the counts.


Respectfully Submitted,

*Ronald S. Tillman*
Ronald S. Tillman




<u>VERIFICATION</u>

I hereby certify under penalty of perjury that I am the Plaintiff in the above-captioned case; that I have read the foregoing compliant; and, that the facts related therein are ture and correct to the best of my knowledge.




*Ronald S. Tillman*
Ronald S. Tillman