UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Ronald Tillman, <br>     Plaintiff, <br><br> v. <br><br> Donald Romine, Tom Sniezek, <br> A.W. Alexander, A. Whitecavage, <br> A. Rowe Jr. Kieth Koncur, <br> FNU Hamiliton, D. Eichner, <br> D. Greene, EdwaRD Sobeleski, <br> FNU Lutz, R. Frasch, <br> FNU Krater, W.L. Robey, <br> FNU Winkler, FNU EY, et. al,, <br>     Defendants. | CIVIL NO. 1:00-cv-02041 <br><br> J U R Y  T R I A L <br> D E M A N D E D <br><br> FILED <br> HARRISBURG, PA <br><br> MAY 23 2001 <br><br> MARY E. D'ANDREA, CLERK <br> Per _____ Deputy Clerk |

AMENDED COMPLAINT

And , **Now Comes**, the plaintiff Mr. Ronald S. Tillman, in <u>pro-se</u> and files this complaint;

I. <u>PARTIES</u>

1. Plaintiff Ronald S. Tillman (hereinafter "Plaintiff"), is confined at the Federal Correction Institution at Edgefield, in Edgefield, South Carolina......Formerly incarcerated at United States Penitentiary Lewisburg, P.O. Box 1000, Lewisburg, Pa. 17837.

2. The above named Defendants (hereinafter "Defendants"), are individuals whom are emplyed as officers at U.S. Penitentiary Lewisburg (hereinafter "USP Lewisburg"). These officers are being sued in their individual capacity.

1

## II. JURISDICTION

3. This court maintains jurisdiction over the instant case in accordance with 28 USC § 1331 as this action is based on the laws and Constitution of the United States. Also, jurisdiction is proper to issue a writ of mandamus pursuant to 28 USC § 1361.

## III. ADMINISTRATIVE REMEDIES

4. Plaintiff has exhausted all his administrative remedies available to him. Federal Bureau of Prisons Informal resolution attempt on 5/19/00. Federal Bureau of Prisons BP-9 case number 214074-F1. Federal Bureau of Prisons BP-10 case number 214074-R1. Federal Bureau of Prisons BP-11 case number 214074-A1, all was denied.

## IV. FACTS

5. Plaintiff has on numerous occasions brought to the attention of the defendants while housed at USP Lewisburg, the problem with their violations of the smoking policy. Where as officers and inmates are violating the smoking policy. And the officers that refused to enforce the smoking policy throughout this institution.

6. On or about 3/21/00, Plaintiff went Tom Sniezed, Associate Warden of Programs, Plaintiff told Sniezek that plaintiff had went to Lopez and spoke with him about the smoking problem throughout the institution. Plaintiff stated to Sniezek that Plaintiff has not seen any improvement in the officers enforcement of the smoking policy, after Plaintiff talked with Lopez. Plaintiff asked Sniezek could he instruct his officers to comply with the smoking policy at USP Lewisburg. Because the smoke is making Plaintiff sick, burning his nose and throat. Sniezek said he would look into it.

2

7. On or about 3/21/00, Plaintiff went and spoke with A.W. Alexander and Unit (3) Manager, about the smoking problem in Unit (3) E-1 and the non-smoking TV rooms. Plaintiff stated to Alexander that [A. Whitecavage] was moving inmates that smoke on the non-smoking floor. And that inmates and officers were smoking all over the unit (3) E-Block in no smoking areas. Plaintiff told Alexander how the smoke was making Plaintiff sick. Alexander asked Plaintiff what was going on in the block. Plaintiff stated that officers and inmates were smoking in non-smoking areas; And how [Alexander] had inmates living on the non-smoking floor that smoke. Plaintiff asked Alexander to move those inmates off the non-smoking floor. Alexander said that He would take care of the problem.

8. On or about 3/22/00, Plaintiff went and spoke with his Counselor A. Whitecavage, about the inmates that were being placed on Unit (3) E-1 non-smoking floor that smoke. Whitecavage said that he was not moving smokers on Unit (3) E-1 non-smoking floor. Plaintiff asked Whitecavage to come to Unit (3) E-1 and check to see who is smoking. Or ask the inmates if they smoked or not, because the smoke was making Plaintiff sick. It also caused a burning in the Plaintiff's nose and throat. Whitecavage moved two more inmates on 8/15/00 on the non-smoking floor that smoked. But as of this date 10/30/00 inmates are still smoking on non-smoking floor.

9. On or about 4/13/00, Plaintiff went and spoke with the Warden Donald Romine, in the kitchen on main line about the smoking problem in the institution. Plaintiff told Romine that he had already talked with Lopez and Sniezek and Alexander his Unit manager about the smoking problem all over this institution. Plaintiff told Romine how the smoke was making Plaintiff sick. How you can not even walk

3

down the hallway without some one smoking. Officers and inmates are smoking in the halls and TV rooms and throughout the Units. Officers are not enforcing the non-smoking policy throughout this institution. Romine told Plaintiff that he would have a talk with his officers and told Plaintiff to go back to his Unit manager [Alexander] about those inmates that were living in Unit (3) E-1 that smoke, so that they could remove those inmates out of the non-smoking Unit and off the floor.

10. On 6/19/00, at 10:05 p.m. Officer Edward Sobeleski came in Unit (3) E-Block to help with the count. An inmate was found and was dead in his bed. Sobeleski was watching the cube so that no one would disturb the area. Sobeleski started smoking. He lit up a cigarette and smoked cigarette after cigarette. Sobeleski kept right on smoking. While Sobeleski was smoking, every inmate that smoked on E-1 was smoking right along with Sobeleski. And Sobeleski said nothing. By the time Sobeleski left the Block he had smoked a whole pack of cigarettes.

11. On or about 9/11/00, at 11:20 a.m., Officer A. Rowe Jr., while making rounds in Unit (3) E-1, there was an inmate smoking; Rowe walked right to him saying nothing. As officer Rowe was leaving E-1, officer Rowe opened the door and there was another inmate smoking on the phone. Which is a non- smoking area. Rowe walked right past him. Then on these dates while working Unit (3) E-1 Block, officer Rowe did observe inmates smoking and did nothing about it: 9/8/00; 9/9/00 and 9/16/00 at 12:10 p.m.

12. On 9/6/00 at 9:25 p.m., while making rounds on Unit (3) E-Block, officer Wesley Robey came in the non-smoking TV room; inmates were smoking in this TV room and Robey said nothing. On 9/14/00 at 7:45 p.m., inmates were smoking in the non-smoking phone area. Robey walked right by them saying nothing. On 9/14/00 at 7:50 p.m. Officer Robey was sitting in the non-smoking TV room watching the Martin Lawrence show, two inmates were smoking and Robey was sitting right behind them and said nothing. And on 9/18/00 at 9:35 p.m. and 9/21/00 at 9:25 p.m.; 9/22/00 at 4:55p.m.; and 9/27/00 at 8:28 p.m. inmates were smoking in the non-smoking areas at all the above dates. And Officer Robey never said anything to them., or asked them to leave the non-smoking area(s).

13. On 9/9/00 at 9:35 p.m. Officer (FNU) Hamilton came on Unit (3) E-1 to shake down an imates cube. While Hamilton and another Officer shook down the inmates cube the inmate was two cubes down smoking. Hamilton and the other officer picked up the inmates cigarettes and looked in them, Hamilton and the other officer got through with the shake down, Hamilton then told the inmate he was sending him to the Lieutenant's office. The inmate asked Hamilton could he get his cigarettes, the inmate got his cigarettes and went down to the Lieutenant's office. When this inmate came back to the block, The same officer Hamilton let the inmate back in the block. This inmate was smoking a cigarette when he came through and Hamilton said nothing to him, and the inmate walked right by Hamilton and went on E-1 which is a non-smoking floor!....."Smoking" his cigarette. On 9/16/00 at 8:35 p.m., Hamilton and another officer was on the first floor phone area, at the front door. They had an inmate they were carring to the Lieutenants office. There were "three" inmates smoking, two were on the phone and the other one was talking with

5

Officer Hamilton. At no time did Hamilton tell these inmates to put out their cigarettes or leave the non-smoking area. And on 9/17/00 at 4:50 p.m.; 9/21/00 at 9:50 p.m.; 9/23/00 at 9:23 p.m. and 9/24/00 at 4:36 p.m. inmates were smoking in non-smoking areas and Hamilton said nothing.

14. On 9/24/00 at 12:17, Officer (FNU) Kratzer came on the first floor looking for an inmate. There was an inmate smoking, Kratzer started talking with the inmate. Kratzer asked the inmate where did another inmate live. The inmate was still smoking and told Kratzer that he did not know this inmate. On 9/25/00 at 8:15 p.m. Kratzer, while making his rounds observed inmates smoking all over the first floor, and Officer Kratzer walked right past them saying nothing about their violation of the smoking policy. On 9/25/00 at 12:15 p.m. Kratzer was walking with an inmate on the non-smoking floor while this inmate was smoking a cigarette and Kratzer said nothing to the inmate. On 9/28/00 at 12:00 noon in the non-smoking unit Officer Kratzer was doing his block census count and when the Officer came into the TV room of the non-smoking block, He observed inmates smoking and said nothing. He simply left without saying or doing anything to enforce the non-smoking policy in the non-smoking unit. On 9/29/00 at 3:45 p.m., Kratzer walked right past an inmate that was smoking on the first floor phone area, which is a non-smoking area.

15. On 10/1/00 at 8:00 p.m., Officer D. Eichner was on the first floor in Unit (3) E-1 shaking down an inmates cube. Right across from where Eichner was, there was an inmate smoking Eichner could not help but see the inmate standing up smoking. Eichner never said anything to him. Eichner got through shaking down the inmates cube

6

and walked out of the door on the first floor and right out that door is the phone area and their was an inmate smoking, and Eichner walked right past him saying nothing of the smoking violation. This occurred on 10/3/00 at 9:50 p.m.

**. On 10/4/00 at 4:45 and 9:55 p.m. and 10/8/00 at 7:00 p.m. Eichner was the officer working Unit (3) E-1 on the above dates and inmates were smoking and Eichner did or said nothing to those inmates that were smoking.

16. On 10/5/00 at 4:05 p.m. Officer D. Greene came into Unit (3) E-Block to help with the FOUR (4) o' clock count. When Greene came into Unit (3) E-Block he was smoking. Greene was standing in the first floor hall talking with Officer R. Frasch and again at 9:50 p.m. Greene was in the non-smoking TV room and their were three inmates in that TV room smoking. Greene was smoking in the non-smoking TV room. On 10/10/00, Officer (FNU) Lutz was working Unit (3) E-Block. An inmate came down to use the phone, Lutz was standing there when this was smoking. Lutz never said anything to him. On 10/13/00 at 8:35 a.m. there was a shake down in Unit (3) E-1 the inmates went up to the TV room and their were inmates smoking and Lutz said nothing to them. On 10/15/00 at 1:33 p.m., inmates were in the non-smoking TV rooms smoking and Lutz was watching football, while these inmates were smoking in a non-smoking TV room.

17. On 10/19/00 at 12:17 p.m., Officer R. Frasch was on the first floor in Unit (3) E-Block. There was an inmate smoking in the non-smoking phone area. Frasch never said anything to him, and again at 3:45 p.m. on 10/19/00 Frasch was in the same area on the first floor non-smoking area, when an inmate came down smoking. He was standing right in front of Frasch smoking, but Frasch never said

7

anything to him. On 10/20/00 at 12:00 and 10/27/00 at 8:00 a.m. inmates were smoking in non-smoking areas and Frasch said nothing of the non-smoking policy violations.

18. On 12/16/00 at 12:30 in the afternoon, Officer Winkler was violating the smoking policy. Officer Winkler was smoking in the movie theater. This violation was after the NEW memorandum that was put into effect on December 12, 2000. And on 12/23/00 at 12:45 Officer Winkler is in the auditorium smoking. Officer Winkler and two inmates are standing up at the gate smoking. Agian on 1/13/01 Officer Winkler is smoking in the Movie theater. At no point in time did Officer Winkler try to enforce the smoking policy.

19. On 12/18/00 I spoke with Captain Ey, about his officer smoking and not enforcing the smoking policy. I spoke with Captian Ey, about his men enforcing the smoking in the auditorium. Ey said he would look into it. Right after that, the same Officer was smoking again and I went to captian Ey again, and told him about his officer smoking in the auditorium and not enforcing the smoking policy. Nothing happened as a result of me talking with Captian Ey; So I filed a BP-8 on this officer, I went and spoke with captian Ey about the BP-8, Captian Ey told me that he never got the original copy. I told Captian Ey, that my Unit Manager A.W. Alexander. Said that he gave it to him. So I was told to file another BP-8 and as of this date 3/19/01 I have not gotten a response.

## COUNT I

### ( CRUEL AND UNUSUAL PUNISHMENT)

20. The defendats are aware of the harm caused by the second hand smoke.

21. The defendants have taken a deliberate indifference to the serious medical need of Plaintiff, to-wit: to be free from the effects of second hand smoke.

22. Plaintiff has described and brought the problem to the defendants attention. However, they simply ignored his complaints.

23. As a proximate result of the cruel and unusual punishment inflicted by the defendants, Plaintiff was damaged.

---

24. Action in mandamus pursuant to 28 USC § 1361. (Began Count II)

25. Defendants are agents of the United States.

26. Federal bureau of prisons policy here at USP Lewisburg purpose was a result of the Surgeon General determination that passive inhalation of enviormental tobacco smoke possess a health hazard, it is necessary to limit smoking to certian areas of the institution. Program statement 1640.03.

27. However, the defnedants refused to comply or enforce the policy. The defendants have a duty to comply and enforce the policy.

28. All administrative remedies are exhausted.

29. Irreparable harm will continue unless the defendants receive a mandate to comply with the policies of which they have a duty to comply with.

30. Plaintiff request an injunction compelling the defendants to comply with the smoking policy at USP Lewisburg.

31. Therefore, Plaintiff requests a writ of mandamus pursuant to 28 USC §1361.

Wherefore, Plaintiff Ronald S. Tillman, requests in the amount to be proven at trial compensatory damages, punitive damages and fees recovery of cost. plaintiff requests that the defendants be enjioned from further infliction of cruel and unusual punishment. And be required to properly enforce the smoking policy in line with community standards, and that a writ of mandamus be issued pursuant to 28 USC § 1361.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on each of the counts.

Respectfully Submitted,

*Ronald S. Tillman*
Ronald S. Tillman

### VERIFICATION

I hereby certify under the penalty of perjury that I am the Plaintiff in the above captioned case; that I have read the foregoing complaint and that the facts related therein are true and correct to the best of my knowledge.

*Ronald S. Tillman*
Ronald S. Tillman

EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD S. TILLMAN,
    Plaintiff

vs.     :    CIVIL ACTION NO. 1:CV-00-2041

DONALD ROMINE, et al.,
    Defendants

FILED
HARRISBURG, PA

MAY 11 2001

MARY E. D'ANDREA, CLERK
PER _____ DEPUTY CLERK

O R D E R

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

    The pro se Plaintiff, Ronald S. Tillman, filed a complaint on November 22, 2000, alleging cruel and unusual punishment by Defendants for failing to enforce a nonsmoking policy at USP-Lewisburg. On January 26, 2001, we granted his motion for leave to file an amended complaint. On April 11, 2001, we granted him an extension of time until April 30, 2001, to file his amended complaint. On April 13, 2001, Plaintiff filed a second motion to amend his original complaint and attached a proposed amended complaint. For reasons which are unclear, he has yet to actually <u>file</u> his amended complaint with the Clerk of Court. We will grant him fifteen days from the date of this order to file an amended complaint. If he fails to do so, this action will proceed on the original complaint.

    Accordingly, this 11th day of May, 2001, it is ordered that:

AO 72A
(Rev.8/82)

1. Plaintiff shall have 15 days from the date of this Order to file an amended complaint.

2. If Plaintiff files an amended complaint within the time specified, the Defendant shall have 10 days from the date of the filing of the amended complaint to plead or otherwise respond.

3. If the Plaintiff does not comply with paragraph 1, the action will proceed on the original complaint, and the Defendant shall have until June 5, 2001, to plead or otherwise respond.

William W. Caldwell
United States District Judge

2

AO 72A
(Rev.8/82)

EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Ronald S. Tillman,
    Plaintiff

v.                                       Civil Action No.1:CV-00-2041

Donald Romine, et. al.,
    Defendants.

---

PETITION FOR NAME OF COURT AGENT WHO FAILED TO SIGN FOR MOTION
DELIVERED AND DATED BY THE HONORABLE COURT

---

      **Comes Now,** Plaintiff, **Ronald S. Tillman,** In Pro/Se and with a reverance for the honorable law. The Plaintiff filed and certified copies of petition to the honorable court in a timely and efficient manner. (See Exhibits of U.S. Postal Form P.S. Form 3811, Domestic Return Reciept)(See also U.S. Postal Certified Mail receipt PS Form 3800 #7099 3400 0015 2024 4196). The plaintiff has followed the courts requirements to the letter! It is beyond his control in an incarcerated situation what transpires at the Court house. The exhibits portrayed in this petition for a clarification of the unnamed receiver of U.S. Mail in the Middle District of Pennsylvania. Plaintiff submitted 16 copies of U.S. Marshal Summons forms, Submitted 16 U.S. Marshal 285 Forms, One cover Sheet, One Certificate of service was also submitted. The plaintiff also had 18 copies of the Amended complaint submitted to the Court with 2 copies for the court clerk. The plaintiff humbly and respectfully request to have the forms listed above resent to him for a completion once again because of the clerks mistakes. The court has a duty to

1

to assist and support a pro/se litigant who has complyed with the applicable rules and procedures of this honorable court. The request is not to delay Justice but to properly support the Complaint that is presently in this court. The court can recommend the forms misplaced to be sent to the plaintiff for a resubmittion and in the fairness of the judicial forum.

The court has a obligation to uphold its duty to the plaintiff. The plaintiff will send a copy of the Amended complaint along with the instant petition for assistance and clarification.

The plaintiff is requesting the assistance of the Court in this matter. The Plaintiff will re-submit ONE COPY of the amended complaint and he humbly request the Court to forward the copies to all named defendants in the Civil Complaint. The process for a incarcerated person to get another set of Marshal forms takes a few weeks and the Court has set a specified time frame for the resubmittion of the required documents. Petitioner will attempt a telephonic conversation with a clerk or a representative of the court to further assist himself in this vital matter. The number that will be called is (717) 221-3920 in Harrisburg, PA addressing a representative of District Clerk Mary E. D'Andrea For the Middle District of Pennsylvania. If further information is needed the plaintiff is a respectful man who wants to be treated fairly and who wants to be a fair participant in any form to assist this dilemma. I await your response and or request for additional information.

Dated this _16_ day of May, 2001............................

Respectfully Submitted,

*Ronald S. Tillman*

Mr. Ronald S. Tillman

2

EXHIBIT "C"

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

C-3

• Print your name, address, and ZIP Code in this box •

Ronald Som Villman #35575071
Unit C-3 Room 321
Federal Correctional Institution
P.O. Box 724
Edgefield, S.C. 29824

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *"Return Receipt Requested"* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

3. Article Addressed to:
OFFICE OF THE CLERK
U.S. DISTRICT COURT
228 WALNUT ST.
P.O. BOX 938
HARRISBURG, PA 17108

4a. Article Number
7099-3400-0015-2024-4196

4b. Service Type
☐ Registered     ☒ Certified
☐ Express Mail   ☐ Insured
☒ Return Receipt for Merchandise  ☐ COD

7. Date of Delivery

5. Received By: (Print Name)

8. Addressee's Address (Only if requested and fee is paid)

6. Signature (Addressee or Agent)

PS Form 3811, December 1994          102595-99-B-0223    Domestic Return Receipt



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

7099 3400 0015 2024 4196

Postage $ .34
Certified Fee 1.90
Return Receipt Fee (Endorsement Required) 1.50
Restricted Delivery Fee (Endorsement Required)
Total Postage & Fees $6.60

APR 10 2001  29824

Recipient's Name: Ronald S. Allman #35575-011
Street, Apt. No.; or PO Box No.: FCI Edgefield P.O. Box 724
City, State, ZIP+4: Edgefield, SC 29824

PS Form 3800, February 2000          See Reverse for Instructions