See Attachment

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

Ronald S. Tillman,            :
                              :
         Plaintiff            :
                              :    CIVIL NO. 1:CV-00-2041
     v.                       :
                              :    (Judge Caldwell)
                              :
Donald Romine, et. al,        :
                              :
         Defendants           :

MEMORANDUM

I. Background.

Ronald S. Tillman, a convicted federal prisoner currently confined at the United States Penitentiary ("USP") at Edgefield, South Carolina, filed this civil rights action under 28 U.S.C. § 1331 for alleged events that occurred while housed at the USP-Lewisburg, Pennsylvania. Tillman names the following USP-Lewisburg employees as defendants: Warden Donald Romine, Associate Warden Tom Sniezek, Associate Warden Lois Lopez, Unit Manager A. Alexander, Correctional Counselor A. Whitecavage, Romeo Bone, Corrections Officers A. Rowe, Jr., Keith Koncir, "FNU" Hamilton, D. Eichner, D. Greene, W. Sobleski, "FNU" Lutz, R. Frasch, "FNU" Kratzer, "FNU" Hagenbuch, and W.L. Robey.

With the leave of Court, Tillman filed an amended complaint (Doc. 21) on May 23, 2001. In his amended complaint Tillman omitted defendants "FNU" Hagenbuch and Romeo Bone, and thus, they

are deemed voluntarily dismissed from this action. He also identified Keith Koncir as a defendant, but made no factual allegations against him. Accordingly, Koncir is dismissed without prejudice from this action. Plaintiff added the following defendants in his amended complaint: "FNU" Winkler and "FNU" Ey. All of the defendants were served except for the additional named defendants.[1]

Tillman alleges in his amended complaint that he was exposed to high levels of environmental tobacco smoke ("ETS"), or smoke, while housed at USP-Lewisburg as a result of defendants' failure to adhere to and enforce the institution's smoking policy during a nine-month period. As a result of that exposure he claims he suffered serious health problems and requests injunctive and monetary relief. Tillman is no longer housed at USP-Lewisburg.[2]

Pending before the Court is defendants' motion for summary judgement. Although Tillman filed a brief in opposition to defendants' motion for summary judgment and supporting exhibits, he

---

[1] Although it appears that Tillman named Winkler and Ey in his amended complaint, they were never served with a copy of the amended complaint. For the reasons discussed, infra, this oversight does not impact upon the Court's ability to address defendants' dispositive motion, or the ultimate dismissal of this case against these defendants.

[2] In February 2001, Tillman was transferred to USP-Edgefield, Edgefield, South Carolina. Therefore, his request for injunctive relief is moot.

-2-

did not filed a response to defendants' statement of material facts. Defendants did not file a reply brief.

For the reasons discussed in this memorandum, defendants' motion for summary judgment will be granted, and the case will be dismissed against all named defendants.

II. Discussion.

A. Standard of Review.

The Court will consider defendants' motion under the well established standard applicable to summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986); Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Federal Rule of Civil Procedure 56(c) requires that the court render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). If, however, "the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Advisory Committee Notes to Fed.R.Civ.P. 56(e) (1963 Amend.).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 323 (1986). This burden may be met by the moving party pointing to the absence of evidence to support an essential element of the non-moving party's case for which the party bears the burden of proof at trial. <u>Id</u>. at 325.

Rule 56 provides that, where such a motion is made and properly supported, the adverse party must show by affidavits, pleadings, deposition, answers to interrogatories, and admissions on file that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

When addressing a summary judgment motion, the court's inquiry focuses on "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 251-52 (1986). A party opposing such a motion must adduce more than a mere scintilla of evidence in his favor, and cannot simply reassert factually unsupported allegations contained in his pleadings. <u>See</u> <u>Celotex Corporation</u>, 477 U.S. at 325. Further, an opposing party cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit. <u>Liberty Lobby</u>, 477 U.S. at 256-57. If the evidence in favor of the non-moving party is merely colorable or not

-4-

significantly probative, summary judgment should be granted. <u>Boyle v. County of Allegheny</u>, 139 F.3d 386, 393 (3d Cir. 1998) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)). Therefore, when the movant has supported his motion with affidavits, the opponent "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth <u>specific</u> <u>facts</u> showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e)(emphasis added).

In the Standing Practice Order issued in this case, the court specifically discusses Local Rule 56.1 and provides a copy of the text of that rule. <u>See</u> Doc. 3. Rule 56.1, states in part: "[u]pon any motion for summary judgment pursuant to Fed. R. Civ. P. 56, there shall be filed with the motion a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. Additionally, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it contended that there exists a genuine issue to be tried." <u>Id</u>. "All material facts set forth in the statement required to be served by the moving party will be <u>deemed</u>

to be <u>admitted</u> unless controverted by the statement required to be served by the opposing party." <u>Id</u>. (emphasis added).

With these principles in mind, the Court will first set forth the allegations in the complaint.[3] The Court will address materials submitted by the parties to demonstrate that defendants are entitled to judgment.

B.  <u>Facts</u>.

Because Tillman did not file a counter-statement regarding the defendants' motion for summary judgment, all facts contained within defendants' statement of undisputed material facts are deemed admitted. Only a general review of some of these material facts is necessary for the resolution of this motion.

Tillman asserts that his Eighth Amendment rights were violated when USP-Lewisburg defendants repeatedly permitted corrections staff and inmates to smoke in designated non-smoking areas in contradiction to institutional policy. Tillman contends he suffered physical injury as a result of exposure to tobacco smoke that permeated his housing unit and other smoke free common areas during a nine-month period.

---

[3] Because Tillman filed an "amended" complaint, and not a supplement to his original complaint, the amended complaint is complete in itself and supercedes any prior pleadings. Therefore, this Court will only review the allegations stated in plaintiff's amended complaint, doc. 21.

Defendants have submitted declarations in support of their statement of material facts that acknowledge that Tillman advised defendants that he saw individuals violating the institution's smoking policy by smoking in his living unit and other common areas. (Record to Brief in Support of the Defendants' Motion for Summary Judgement, Doc. 26, R. 1, 3 - 5). At the time Tillman was assigned to the first floor of E-block, a modified dormitory-style unit wherein each inmate has his own four-walled cubicle. (Doc. 26, R. 1, 3). Per policy, smoking is permitted only on the second and third floors of E-block, and not on the first floor where plaintiff lived. (Id.) Defendants screen inmates before assigning them to the first floor of E-block. Before an inmate is assigned to the first floor, they are advised that smoking in prohibited in the unit. Known smokers are assigned to other units. (Id. at R. 3).

Defendants suggest that due to staff attending to their assignments combined with the physical layout of the housing unit, an inmate can, and will, attempt to conceal his smoking from staff, but does not undertake the same evasive efforts to hide his smoking from other inmates. (Doc. 26, R. 8, 11 - 15). Although Tillman would complain of inmates violating the smoking policy after the fact, he failed to advise unit staff of these alleged incidents at the time of their occurrence, thus limiting defendants' ability to efficiently address the situation and immediately enforce the non-

smoking policy. (Id. at R. 1). Defendants state that had Tillman advised staff simultaneously with the alleged infraction, defendants would have immediately confronted the offending inmate, but Tillman never presented them with that opportunity. (Id. at R. 11 - 15). Tillman also refused a request from staff to identify the inmates he observed violating the unit's smoking policy, thus further frustrating defendants' ability to directly address Tillman's concerns of exposure to secondhand smoke. (Id. at R. 1).

Regardless of Tillman's lack of assistance, the unit manager instituted "shakedowns" of the individual cubes of the inmates residing in the dormitory-style smoke-free living area in an effort to enforce the non-smoking policy. (Id. at R. 1, 3). Inmates found in possession of cigarettes were counseled as to the institution's smoking policy and reassigned to other housing units. (Id. and Doc. 32, p. 4). As for Tillman's concerns that he witnessed staff on occasion smoke in non-smoking areas such as his housing unit, defendants acknowledged these events may have happened a limited number of times. Specifically, defendant Sobleski admits he may have smoked a cigarette on the housing unit during a particularly stressful event - after he discovered an inmate in the unit had died. (Doc. 26, R. 7). To the extent that defendant Greene was alleged to have violated the smoking policy on a particular day as alleged by Tillman, defendants acknowledged

-8-

a particular day as alleged by Tillman, defendants acknowledged that Greene was not regularly assigned to work on Tillman's living unit, and that he was not immediately aware that unlike the second and third floors of E-block, the first floor was a designated smoke-free area. However, after being advised by another staff member that the first floor was a non-smoking area, Greene immediately discarded his cigarette. (Id. at R. 16). Additionally, after Tillman's complaint of infractions of the smoking policy, staff were reminded at roll calls, and other management meetings, of the importance of enforcing the smoking policy. (Id. at R. 1 and 6).

In addition to declarations supporting these facts, defendants have submitted a multitude of Tillman's signed commissary receipts during the nine-month period in which he complains of exposure to harmful levels of secondhand tobacco smoke. (Id. at R. 20, 25-37). The commissary slips reveal that Tillman purchased significant quantities of cigarettes during this period.[4]

Finally, defendants note that Tillman has not alleged any specific medical symptoms he suffered as a result of exposure to

---

[4] Tillman's commissary receipts reflect the following tobacco purchases: January 31, 2000, 10 packs of Newports; February 14, 2000, 10 packs of Newports; March 6, 2000, 12 packs of Newports; April 3, 2000, 20 packs of Newports; July 3, 2000, 10 packs of Newports; August 7, 2000, 10 packs of Newports; September 18, 2000, 10 packs of Newports; and October 17, 2000, 30 packs of Newports and 10 packs of Marlboros.

environmental tobacco smoke (ETS) and attach a copy of his medical records. (Id. at R. 38 - 85). There are no notations within Tillman's medical record of his complaining of illness due to his exposure to ETS. The record does reveal he had throat surgery to remove an area of calcification; however, there is nothing in the record to support a finding that this ailment was caused, or aggravated, by his exposure to secondhand smoke. (Id.).

In attacking defendants' motion, Tillman submitted a brief in opposition, his own declaration, duplicate copies of documents submitted by defendants in support of their motion for summary judgment, and copies of his administrative grievances and responses relating to his complaints of exposure to secondhand smoke by staff and inmates. (See docs. 31 and 32). Generally, Tillman suggests the "factual allegations" of his declaration create a genuine issue of material fact defeating defendants' motion. (Doc. 32). Within his declaration he claim he was only asked for the names of inmates violating the smoking policy, and not staff. He also claims he could not divulge the names of the inmates smoking in his unit less he be labeled a "rat" or "snitch" putting his life in jeopardy. He then claims that regardless of the professed efforts of defendants, Whitecavage, Sniezek and Romine, to enforce the institution's smoking policy, they each had supervisory roles which included enforcement of the smoking policy. He states he "will oppose" the

-10-

remainder of the declarations submitted by defendants as the declarants are part of a "conspiracy" to cover up violations of the smoking policy at USP-Lewisburg. (Doc. 32, ¶ 7). Tillman claims that he does have documented nose and throat problems and that he had throat surgery on January 29, 2001, and cites to his medical record which both he and defendants have submitted as evidence of these ailments. (Id. at ¶ 10). Finally, Tillman admits to purchasing cigarette products but claims he used them to barter with other inmates for desired amenities. Tillman denies ever having smoked. (Id. at ¶ 9).

Based on the undisputed facts presented by the defendants, which includes plaintiff's medical record, plaintiff has failed to present evidence to show that defendants' conduct rises to the level of constitutional violations and, accordingly, defendants' motion for summary judgment will be granted.

C. <u>Tillman's Eighth Amendment Claim of Deliberate Indifference to a Serious Medical Need</u>.

The Eighth Amendment's[5] ban on cruel and unusual punishment applies to a prisoner's conditions of confinement that are not formally imposed as a sentence for a crime. <u>Helling v. McKinney</u>, 509 U.S. 25, 29-30 (1993). Eighth Amendment claims involve a two-

---

[5] The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

-11-

prong analysis. Eighth Amendment claims must satisfy both an objective component (the deprivation must be sufficiently serious) and a subjective component (the defendant must have been deliberately indifferent). See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 297 (1991); Young v. Quinlan, 960 F.2d 351, 359-60 (3d Cir. 1992).

As to the objective element, the Eighth Amendment is violated only when an inmate is deprived of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The Eighth Amendment does not mandate comfortable prisons, and prisons that house inmates convicted of serious crimes cannot be free of discomfort. Hudson v. McMillian, 503, U.S. 1, 9 (1992); Peterkin v. Jeffes, 855 F.2d 1021, 1027 (3d Cir. 1988).

As to the second, subjective element of "deliberate indifference", the Supreme Court in Farmer v. Brennan, 511 U.S. 825 (1994), explained the quantum of knowledge that must be possessed by a prison official which is necessary to satisfy the deliberate indifference standard. The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind". Wilson, 501 U.S. at 298. The legal malice required to satisfy the subjective component of an Eighth Amendment claim is not present unless the defendant's conduct involved unnecessary and wanton infliction of pain. Id.

-12-

In Farmer v. Brennan, 511 U.S. 825 (1994), the Court described the standard for determining deliberate indifference as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837. The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." Id. at 842.

In Helling v. McKinney, 509 U.S. 25 (1993), the Supreme Court held that an Eighth Amendment claim could be based upon possible future harm to health, as well as present harm, arising from exposure to environmental tobacco smoke ("ETS"). The Supreme Court declared that the objective component of an Eighth Amendment claim based upon exposure to ETS is satisfied if (1) the prisoner is being exposed to unreasonably high levels of environmental tobacco smoke; (2) scientific and statistical evidence establishes a likelihood that an injury to the prisoner's health will be caused by the exposure; and (3) the risk of harm is so grave that it "violates contemporary standards of decency to expose anyone to such a risk." Helling, 509 U.S. at 35-36. Exposure to ETS is not an objectively serious injury per se. Id. at 34-35; Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)("Although Helling held

-13-

that exposure to ETS might satisfy the objective prong of the deliberate indifference test under some circumstances, Helling did not hold that exposure to ETS qualifies as an objectively serious injury per se. Henderson still must show that his present injury from ETS exposure was objectively serious. Henderson was unable to establish any reasonable basis for finding a significant medical condition or ailment at all resulting from his exposure to ETS.")(internal citations omitted).

In light of the foregoing law, and based upon a review of the defendants' unopposed statement of material facts, Tillman has failed to establish the objective component of an Eighth Amendment violation, and thus his complaint against all defendants is subject to dismissal.

To succeed on his Eighth Amendment claim of exposure to secondhand smoke, Tillman must satisfy the objective component either by establishing that he has a serious medical need for a smoke-free environment, or that, regardless of his health the levels of secondhand smoke in the prison create an unreasonable risk of serious damage to his future health. See Helling v. McKinney, 509 U.S. 25, 35 (1993). He has done neither.

Although plaintiff "contends his involuntary exposure to ETS from other inmates and officers cigarettes clearly shows the objective element the plaintiff has to prove being exposed to

-14-

unreasonable high levels of ETS, and plaintiff's subjective element," we disagree. (Doc. 32, p. c). First, Tillman has not alleged that he has been diagnosed with a medical condition requiring a smoke-free environment, nor has he alleged he has been treated for any condition brought about by (or aggravated by) exposure to ETS. Tillman offers no evidence to suggest he suffers from asthma or other respiratory illness, or other malady which is the result, or even exacerbated by exposure to ETS. Tillman has not demonstrated an individual extreme sensitivity which would make the occasional exposure to smoke-polluted air rise to the level of cruel and unusual punishment. Absent a serious medical concern, limited exposure to secondhand smoke is a risk our society chooses to tolerate.

Objectively speaking, the discomfort complained of, burning in the plaintiff's nose and throat, is relatively minor.[6] Furthermore, Tillman offers no affirmative connection between his throat surgery and his exposure to ETS. Nor does anything within the context of his medical records support such a finding. Thus, based on the present record, Tillman cannot claim he suffers from a serious medical condition necessitating a smoke-free environment.

---

[6] While we do not discount Tillman's claim of a burning nose and throat, these are not the type of objective serious injuries or medical need that amounts to a denial of "the minimal civilized measure of life's necessities," Farmer 511 U.S. at 834.

-15-

Likewise, Tillman cannot establish, regardless of his health, that during the nine months in question he was exposed to unreasonably high levels of secondhand tobacco smoke at USP-Lewisburg. Contrary to Tillman's assertion, exposure to secondhand tobacco smoke, in itself, does not satisfy the objective prong of the test or establish an Eighth Amendment violation. Helling, 509 U.S. at 34-35; Henderson, 196 F.3d at 846. Even if as Tillman suggests, staff on given days did violate the non-smoking policy, these policy infractions do not rise to the level of a constitutional violation absent a showing of prolonged exposure to unreasonably high level of ETS. Similarly, Tillman's complaints that inmates, known only to him and undetected by staff, violated the unit's smoking policy, in itself does not verify that the levels of secondhand smoke to which Tillman was exposed to rose to the level of a constitutional violation or one that society does not choose to tolerate, especially when staff took reasonable efforts to crackdown on offenders without the assistance of Tillman in a housing unit which makes direct observation of its occupants difficult at best. Plaintiff has offered no competent evidence to suggest otherwise. Consequently, Tillman has failed to establish the objective prong of an Eighth Amendment claim.

Furthermore, even if Tillman had presented evidence from which a jury could conclude that he was exposed to unreasonably high

levels of ETS, he has failed to present evidence from which a jury could reasonably conclude that defendants were deliberately indifferent to a serious danger as he has not presented evidence of a serious medical problem caused by, or aggravated by, secondhand smoke, or that defendants knew he was exposed to unreasonably high levels of tobacco smoke. We will, therefore, grant defendants' motion for summary judgment.

*[signature]*
WILLIAM W. CALDWELL
United States District Judge

Date: March 1, 2002